Ms. Williams, are you going to begin? May it please the Court, I'm Cheryl Williams on behalf of Petitioner Casino Pauma, a business owned and operated by the federally recognized Pauma Tribe. I'd like to reserve three minutes for rebuttal. Unite Here began an organizational campaign at Casino Pauma in 2013, and in connection with that, filed nine and now ten unfair labor practice charges. Three of those were consolidated for hearing in the administrative proceeding below, and those three primarily concerned distribution outside the entrance of the casino. But the order that ultimately was produced from that hearing directed Pauma to cease and desist from maintaining a rule that prohibits employees from distributing literature in guest areas inside the casino, which the board admits includes sensitive areas such as restaurants, restrooms, and restaurants. Today, I present two reasons why the board order should be vacated in whole or in part. First, because the NLRA does not provide jurisdiction over Indian tribes, and second, because the board unreasonably extended basic employee-to-employee solicitation rules to the patron context. I'd like to start with a jurisdiction issue. As we explained in our Rule 28J letter, the Salish Kootenai College case explains that the first step in resolving a case of statutory interpretation is to simply look at the language of the statute. And in that case, Judge Kaczynski wrote that whether a tribe falls within the scope of the False Claims Act depends on the meaning of the term person within the statute. He then applied the statutory... The word person isn't the relevant word in the statute before us, right? So I don't see why that case has any relevance to our analysis. I believe it is, Your Honor. If you will look at the definition of the term person, starting with Section 152.2, an employer under the Act includes any person. And under Section 152.1, the term person is defined only to include individuals and business entities such as partnerships, associations, and corporations. So also, if you look at 160A, it describes a person as the board is empowered to prevent any person from engaging in any unfair labor practice. So I believe it very much turns on a definition... This argument to the agency. This is a statutory interpretation argument. My understanding is that the argument that you made to the agency was quite a different argument. It was based on the exceptions to who is not an employer and the fact that the agency had previously read those exceptions, essentially read in other entities to those exceptions, including for a while, tribes. But did you ever argue the person argument? We did not, Your Honor. But we submitted the Rule 28J letter... But isn't it simply not, given the fact that we are reviewing an agency decision with regard to a statutory interpretation, if you didn't make the argument, aren't we precluded from reaching it? I don't believe so, Your Honor, because the Salish Kootenai College case is intervening authority. Plus what? I'm sorry? The Salish Kootenai College case... But it's still a statutory... Isn't it a jurisdictional requirement that you exhaust your remedies before the board? It is, but we did make jurisdictional arguments before the board. But not this one. Correct. But my understanding of the Ninth Circuit standard as to waiver is that... It's not a waiver problem. That's what I'm saying. It's an exhaustion problem. Okay. But even under exhaustion, my understanding is that there is no order where the board has traveled outside the ambit of its authority. And both tribes and Indian law issues are outside the NLRB's authority. So in order to reach that issue, you do need to conduct the statutory interpretation question. We did cite Noel Canning, NLRB, for that. There's other cases as well, NRB versus Mark J. Jerry. And there's also a futility issue on that aspect as well. Further arguments, I don't think, would have made one lick of difference as to the board's assertion of jurisdiction over Indian tribes. But moving back to the Salish Kootenai College case, as you mentioned, we did make the argument that the statute is not generally applicable. And that was the conclusion that Judge Kaczynski made in the Salish Kootenai College case, because it did not apply to Indians. It was not generally applicable. And as we explained in our brief, the False Claims Act is actually far more inclusive than the NLRA. Because Sections 152 and 3 exclude a whole host of workers from the Act, including government employees, independent contractors, managers and supervisors, those with alternative work arrangements. We've already held that the NLRA is a statute of general applicability, right? Are you talking about the Chappadee case? Yes. In that case, I would say that Judge Reimer said that her findings were preliminary. She did not hold that the NLRA... Not on that question. Oh, right. Not as to that question. Well, my understanding was that the entire opinion was preliminary because she was only looking at the issue of whether jurisdiction was plainly lacking. And the tribe there only noted the governmental exceptions, where we have argued a whole host of exceptions that are excluded from the Act. I mean, you're right that it's in a slightly different posture. I guess it was an enforcement of a subpoena, if I'm remembering right. Right. Enforcement of agency subpoenas. Right. But our... I mean, I don't see how we could say that our interpretation of the NLRA as being a statute of general applicability was somehow not meant to be binding. It was certainly a necessary part of the analysis or the holding of the case, right? I do believe that it was preliminary and that the issue was still open before you. I mean, your position on this issue, I'm not trying to denigrate it at all. I think it's... I mean, obviously other judges in other circuits have thought you're right. But it seems to me we're maybe not the right set of judges to be making this argument to. Maybe you'll have to request for en banc review or Supreme Court review. I don't know. I don't see how we get around the Chappadee case, frankly. Well, I do have some solutions as how you can get around Coeur d'Alene. Okay. I just want to back up a bit about Coeur d'Alene. It starts with... It's based on the United States versus Ferris case. And that case goes on to do a survey of the law saying there seems to be three exceptions to the rule that a general statute is applicable to Indian tribes. So he was basically doing a brief survey and found three exceptions. So it was not meant to be an exhaustive three-factor test that Coeur d'Alene hardened into. And the third prong has been misread by the board. In Coeur d'Alene, it says it allows proof of congressional intent by legislative history or some other means. So some other means could mean a whole host of things. And the later passing of the Indian Gaming Regulatory Act, without adding language extending the NLRA scope to tribal gaming, meets that burden. But the board's standard incorrectly narrows... There's a thing in the history of the IGRA that it's certainly not in the statute, right? The statute doesn't say the NLRA shall not apply. Right. It's not in the statute. So where are you getting that from? Well, it's just a common-sense argument because we know in the 30s that Congress was not thinking about tribes as employers affecting commerce. No, but I'm asking what in the IGRA? Right. I'm getting there. Like I said, it is a common-sense argument. In IGRA, we know that Congress was very much focused on tribes acting as an employer in the casino context. And it's a highly regulated industry. I mean, you have the tribe and the state negotiate in order to determine which regulations apply to the gaming entity. And that compact is then approved by the department. Is there anything that was... Is there in the IGRA, and I don't know the answer to this, any exclusion of coverage of generally applicable federal statutes? Not explicitly, but it does, like I said, it does create this process where the tribes and states negotiate. But that's with the state. Right, but then it is approved by the Department of Interior. There's nothing in there that provides for the waiver or the non-applicability of otherwise generally applicable federal statutes, is there? Not specifically. Not at all? But it does provide a process for input from every branch of the government involved. But it doesn't provide for waiving any federal statutes, does it? Not explicitly, Your Honor. Not inexplicably either. It just doesn't provide for it. Right, but Congress certainly could have done so if they were concerned about it, and Fort Apache was the state of the law at that time. But my point is broader than that. It doesn't address the waiver of any federal statute. Correct. So Fort Apache is not pertinent directly to that point. I would actually like to turn to this substantive issue in this case for a moment to explain how the Board is infringing on core tribal sovereignty. The compact in this case includes a Tribal Labor Relations Ordinance that was approved by the state and negotiated by this union and approved by the Department of Interior. And it prohibits interference with patronage of the casino and also prohibits organizing activities in areas open to the public in order to protect the business, which funds essential government services. And this rule actually conforms with our brief explaining that the Board law has said that the purpose of the speech depends on the audience. For example, organizing is aimed at employees. Striking is aimed at customers. So our position, consistent with Republic Aviation and Beth Israel, is that they should not be allowed to target the customer when the purpose of their speech at this point is merely organizing. The DC Circuit has specifically held otherwise, right? Excuse me? The DC Circuit has specifically held otherwise. In two cases, but the Supreme Court has not and the Circuit has not. Have other circuits held anything about this? No, but actually this, the Ninth Circuit, in the Silver Spur Casino case and in Hughes, which was cited by the Board, actually expresses concern about disruption in a service industry, and that was only where solicitation was between employees. They said it can't be disruptive. It can be disruptive, and if it were disruptive, that would be a different issue. But there's nothing limiting. You're now arguing that, my understanding is that your argument is that the Republic Aviation right does not extend at all to consumers. To the patron context, inside the facility. Well, not inside. This is outside, actually. Right, but the order, our point is that the order is extremely broad. They're not contesting the finding of liability, only the breadth of the order? Well, we're contesting both for different reasons. We're contesting the jurisdiction, and we're also contesting that the order is in. So, in other words, you're not contesting that if there's jurisdiction, there was a, it was improper to preclude the leafleting of customers at the entrance to the casino. We're not contesting distribution from employee to employee. I understand that. Right. But this was not, my understanding is that the distribution at the entrance was to consumers. Right, and we are contesting that as in violation. So why do you keep talking about inside when that was outside? Because the order allows the solicitation inside, distribution and solicitation inside. But you're also contesting it as applied to outside. Yes, to the patron context, because it's in violation of the Tribal Labor Relations Ordinance that has been negotiated by this union, and agreed to by the federal government and the states. And the provision that you say is violated says what again? It prohibits interference with the patronage of the casino, and it also prohibits strike-related picketing and prohibits soliciting in public areas. So, okay. Guest areas. Yeah, so, but let's, so interference with the patrons who are trying to come and, I mean. Use the facility, correct. Yeah, and so you're saying that on the facts in our case, not, I know you referenced some other cases, but I'm talking about on the facts of this case, you say that there was interference? Yes, there was. How so? It's, as the board order explains, the groups of employees were strategically placed at three, I think three different points around the entrance so that everyone passing by could be handed a legal. That's not interference. There was a case, I think you referenced, where people were prohibited from leaving for a couple of minutes, and I could understand that argument, but just walking by someone who's handing you something, how is that interference? Well, these are people looking to come inside the facility and enjoy themselves and have a good time, and then here's this, I mean, we don't know, are they going to talk to them? Are they going to try and, how long are they going to try and engage them? Are they going to bother them? I mean, these are questions we don't know, and we have this ordinance that prohibits public areas, solicitation in public areas. It's an ordinance or it's a compact? Excuse me? It's called a Tribal Labor Relations Ordinance, but it's part of the compact, so we call it the TLRO for short. Do I reserve any time? Excuse me? Yes. I want to say one thing, which is your arguments have been very useful and helpful. Your brief was not. The whole tone of that brief and the whole style of it really made it very difficult to engage your arguments, and your oral argument was quite excellent, but the brief was disturbing. I'm sorry to hear that, Your Honor, but thank you. Good morning. Heather Beard for the NLRB, and again I'm going to really look to make sure at 12 minutes Intervenor Union gets three minutes of my time. So can you start by responding to the person argument? Sure. Something I had not focused on. Let's just put aside any exhaustion issues. I'm just curious about your reaction to what you heard. Correct. Well, we would agree, the Board's position, we would agree with what you said, Judge Watford, earlier. In addition to the exhaustion or lack of exhaustion argument, the term that has always been at issue here in Section 152.2 of the NLRA has been employer, and employer says includes any person. Well, it doesn't even say that. It says includes any person acting as an agent of the employer. So the person that they're talking to is not the employer. It's an agent of the employer. It could be an agent of the employer. Yes, Your Honor. But they don't say an employer is a person who. It says that it includes a person who is an agent of the employer, but that appears not to be the employer. Thank you, Your Honor. That's what I was trying to say. So our position is that the decision of this Court in Salish-Kootenai is applicable to the term Indian and person in the context of the statute that they were taking a look at, which is the FCA, not the National Labor Relations Act, and not the National Labor Relations Act, particularly how this Court held in Chappaday. We would agree with Judge Watford that the Chappaday holding as to general applicability was not preliminary. The entirety of the jurisdictional argument certainly was, but given that the National Labor Relations Act and that particular exception, employer, is what is at issue, we do not believe that the Salish-Kootenai decision is relevant to this case. And I also believe in the 28J response that Union Intervenor has submitted the term person isn't universally construed, actually, by this Court as not including an Indian in the case that they cited. But it doesn't matter because it's not defining who's an employer. It's defining who's an agent of an employer. Yes, Your Honor. So that's my response to the Salish-Kootenai issue. Can I ask you a different preliminary question? Sure. The union maintains that there's an issue of preclusion here. You don't argue that. Correct. A, does it matter that you don't argue it, i.e., is there a waiver of the argument? I'd be curious about why you don't argue it and whether you think there is an issue of preclusion. Sure.  We did not argue issue of preclusion, and the reason we did not argue issue of preclusion is we did not believe that with regard to the way the National Labor Relations Act is a non-self-enforcing statute and under Section 10e, the way that our structure is, that when we had an unenforced decision from our agency And unenforceable. Unenforceable. It's not only unenforced but unenforceable. It's not self-enforcing. So in essence, your decision is not a final decision. Well, the decision is final, and the statute, as Intervenor does point out, does say that a board order is considered final, but in order for it to be enforced, it has to be on review from a court of appeals. And so our position was, given that we have that statutory situation and that we don't have a statute of limitations for which the casino could possibly appeal from, that we thought it was not clear that collateral estoppel was something that would preclude the issue being raised by Casino Palma in this case. And so we do not believe that. So another issue, I think, the question of whether there is issue of preclusion within the NLRB is a different question from whether it applies to the court. Yes, we do. That's what the NLRB's position is. Okay. Go ahead. Okay. So in terms of the jurisdictional issue, I'm happy to answer any questions that this court may specifically have, but in this circuit, given the holdings that we've had on Chappaday with regard to general applicability, when we move, then, into the Coeur d'Alene test, we believe that that test has not only been applied and has been applied and reconciles both interests here, which we agree there are both interests of Indian and interests of labor. And what the board did and what the board has done is accommodate, as this circuit has taught, both of those interests, in not a sort of cavalier way, but in a way that considers both of those interests. And particularly, given the Little River decision in the Sixth Circuit and San Manuel in the D.C. Circuit, we believe that the board reasonably found, under its own statute, as well as considering the three factors in Coeur d'Alene, that here, taking jurisdiction, asserting jurisdiction over an Indian casino that otherwise operates in interstate commerce, that is a business, an enterprise, that has primarily non-Indians who are working there, as well as advertising to non-Indians and going out into interstate commerce, that the employees who are working there cannot be forgotten. And that, I suppose, brings me to the TLRO issue, which you were talking about. It is very true, like it was in the San Manuel case, that there was and is, in the state of California, an IGRA, and under that, a compact. And under the compact, prior to the board ever asserting jurisdiction in 2004 over Indian casinos, there was an interest in protecting employees in some way, shape, or form in working for casinos that were on reservations. And this was at a time when the NLRB was not asserting jurisdiction. Correct. And so once that occurred, there are these compacts in Palmas, and engaged in one. And the position of the NLRB is that that is not something that could ever usurp the jurisdiction that the National Labor Relations Act has, given that it is a federal statute. And indeed, taking a look at all of the cases cited by Casino Palma, there is not one case cited that involves a conflict between a federal law and a tribal law, or assertion of power or sovereignty, where there hasn't been an alignment with the tribe, the federal government, perhaps against a state, or in the context that isn't sovereign immunity from a private lawsuit, or sovereign immunity from a lawsuit by a state. What we're looking at here is when you've got  the National Labor Relations Act is a creature of Congress. Once it has asserted jurisdiction, regardless of what may have been entered into for very good reason earlier, that cannot affect the jurisdiction of the NLRA. And in fact, one thing I'd also like to point out about that TLRO, one of the allegations in this case was that there had been a violation of Section 8A3 of the National Labor Relations Act. Eventually, the board found it was cumulative under the 8A1 finding. But the TLRO is not the same as the NLRA. Indeed, there is no Section 8A3. I noticed that. I thought that was sort of odd. Right, so it's not the same thing as the National Labor Relations Act. And while admirable when there was no jurisdiction being asserted by the NLRB, and the state of California agreed to engage in this, our position is that nothing can assert the federal government's jurisdiction. Can we back up for a minute? With regard to Coeur d'Alene and its application, what about the pertinence of the Michigan v. Bay Mills Indian community case? Now, I understand that that was about, it was directly about sovereign immunity from suit. Correct. But the language is broader, don't you think? And certainly of the concurrences. Sure. Justice Sotomayor's concurrence talking about the difference between commercial activity and saying it's not a subset. And even of the majority opinion, it's broader. The sovereign immunity from suits seems to be treated as a subset. Agreed, Your Honor. And what we think is that even in light of Bay Mills, that what was not addressed by that case and what did not touch Coeur d'Alene and the wisdom of Coeur d'Alene is that in assessing that first factor about tribal self-governance, there is a core and a periphery of what could be tribal self-governance that is infringed too much on by a federal statute of general applicability. However, given the circumstances here, which Bay Mills did not address, when you have employees who would have to essentially be waiving any of their rights, their federal rights, under the National Labor Relations Act to go work at the casino, that given that that wasn't at issue in Bay Mills, Bay Mills would not require this court to change anything about Coeur d'Alene. We certainly agree that, and that's what I think Coeur d'Alene did, and the board in San Manuel also had one more factor that it takes a look at after applying Coeur d'Alene to make sure there aren't any policy reasons why it would not be appropriate for the board to apply its jurisdiction. And so we think that, given that the language was expansive in Bay Mills and wasn't directly on this point, we still think that the test under Coeur d'Alene and the board's decision in San Manuel, which also has Coeur d'Alene embedded in it, is something that is still good law, very wise law, and that there is no reason for this court to revisit it in light of Bay Mills or anything else. We've continued to apply Coeur d'Alene post-Bay Mills, right? At least, maybe not in this NLRA context, but in other contexts. Yes, I think, indeed, even in the Salish Kootenai case, there was a reference to the fact that it has been upheld recently. So it's still good law, and we think that it has been, the Sixth Circuit certainly thought so, and it's something that the board has followed since San Manuel. Has any circuit held against the board's assertion of jurisdiction? Did you say, did any circuit held against? The Eighth Circuit, maybe? No, I don't think there has been a circuit that has held in this particular on-point reservation casino, other than prior... There was a panel that wanted to rule. Yeah, exactly. In Soaring Eagle, which was following, the Sixth Circuit panel following Little River, said that they were bound by their brethren in the other panel and wanted to go the other way. But no, there isn't any case law going against us on that point. So that is why we believe that the board exercised reason here in applying the San Manuel and... The one thing that I'm not sure the board totally explained is why when the board has read the... The statute exception from employer does not include D.C. or any of the territories or the tribes. Originally, there was a unitary, I think somewhat questionable decision nonetheless to read the exception as applying to essentially any United States-affiliated government. And then the tribes were pulled out of that, but the others are still there as I understand it, they're still not applying it to Puerto Rico and Guam and D.C. So has there ever been an explanation of, well, first of all, why you're reading something into the statute that isn't there, i.e. these states' governments that are not mentioned, these governments that aren't mentioned, and then when you're reading them out, you're only reading one of the categories out. Well, in answering your question, I guess what I would say is that at the time that the NLRA was passed, there were also two statutes that were passed about Indians specifically, and given that Indian tribes were not mentioned in there, the reasoning behind why such a statute would be one of general applicability is simply because it's... I'm not asking that question. I'm asking as a statutory interpretation question of what the exception to employers means. Right. You're continuing... Do you understand what I'm saying now? I was going to say the Board has never explained any better than the Board has been explaining since it decided San Manuel and Little River and the decisions that flowed from that. So I... But the Board can simply decline to exercise jurisdiction over sometimes when it has jurisdiction. Absolutely. But that isn't what it claims to have been doing in any of these instances, right? No, Your Honor, that is correct, and I would love to keep talking. I see that I have three minutes left for my... All right, thank you. Thank you very much. Good afternoon, Your Honor. Kristen Martin representing UNITE HERE International Union. I'd like to address both the collateral estoppel issue and the Tribal Labor Relations Ordinance. As to the finality issue with respect to the Board's decision in Casino Palmo I, we believe it is a final decision both because Section 10F says it's final, excuse me, but also because it may not be appealable at this stage. And the doctrine of latches applies to decisions of the Board when it applies under Sections 10E and 10F when decisions are not reviewed expeditiously or when review is not sought expeditiously. I mean, I gather what the Board is saying is an unenforceable decision, one that is not enforceable in its own terms, the kind that issue preclusion applies to at all, ever. But I have a different problem anyway, which is at least part of the core of what they're arguing about. It's not a factual issue. It's a purely legal question. The restatement acknowledges, and it has to be the case, that purely legal questions are often not subject to issue preclusion if raised in an unrelated case. So the only argument, and that has to be the case, otherwise you're going to end up getting precluded for your clients under similar circumstances from you can never re-raise an issue that you, a legal issue that you decide not to raise because you're going to settle a particular case. It doesn't seem the way the system should work. So the question is why, as to a purely legal issue, should we apply issue preclusion, at least as to us? I mean, if the Board wants to do it to itself, fine, but why as to us? Well, several reasons. First, there's several Ninth Circuit cases that say issue preclusion does apply as to legal decisions by an administrative agency, and they're cited in our brief. Right. Second... But you can't take that too far. The system wouldn't work that way. In some cases, the legal issue, in this case, the pure legal issue is identical. And Palma had three ways to obtain review of that if it had wanted to do so in Casino Palma I. It could have filed a petition for review immediately after the decision, but it also could have simply refused to comply with the subpoena, as the respondent employer did in Chappaday Indian Health Services, forcing the Board to go into federal court and establish the head jurisdiction. It also could have filed a lead-in-versa-kind action, originally, and said, we don't like the fact that the Board is asserting jurisdiction over our enterprise, and we want the district court to step in and say it can't. It's acting outside of the orbits of its authority. It didn't even try to do that. So it could have obtained review, and it didn't. And that's what the collateral estoppel doctrine does. And my last question about the... Your points are interesting. Is whether... I mean, issue preclusion can be waived, right? It's not a jurisdiction point. That's right. The Board was the party here. You weren't even a party before the Board. That's right. My client was a party. So why isn't it just waived? Well, it's not waived because the Court is reviewing what the Board did in Casino Palma II. And what the Board did in Casino Palma II is say, issue preclusion. That's the essence of their decision. Right, but they're not defending it here. Or they're not suggesting that it applies to us. Let's put it that way. And they're the party who adopted this. So I understand you're an intervener, but you're kind of an outsider to this particular question. And our response would be the Court is reviewing what the Board did in Casino Palma II, and that's what the Board did. So the question now is, was that appropriate? Was that an appropriate way to resolve this case? Okay. If you want to briefly address the ordinance and or compact or whatever it is, you had some complicated things to say in your brief. Yeah. Potentially, we should stay away from it. What's that? Your essential argument is we should stay away from it. Right, because there's no conflict in this case between the Tribal Labor Relations Ordinance and the NLRA. Counsel for the petitioner, Casino Palma, has misrepresented what the TLRO says about disrupting business. She's referring to Section 8 of the TLRO, which applies to access for union organizers. It's one of the sections that actually doesn't appear in the NLRA but appears in the TLRO. It has a section that replicates Section 8A1 and a section that replicates Section 7. So there's no conflict in this case between the TLRO and the NLRA. It's a question of constitutional importance. It's a preemption question. It wasn't necessary. But she says that there are provisions that would have precluded this particular leafleting of consumers. She's referring to Section 8 of the TLRO is what she referred to, and that's on page 79 of the intervener's excerpts of record, and that's a section that refers explicitly to access for union staff, union organizers, not access for employees. Access doesn't apply to employees, is what you're saying. Yeah. Okay. So there's no conflict, and the statement in the ALJ's opinion that the Tribal Labor Relations Ordinance is a state law and therefore it's preempted was not necessary to the decision, right? All the board had to decide was that the TLRO does not displace its jurisdiction, does not displace the NLRA. It could have stopped there. And because this is a question of preemption, a question of constitutional question, we would urge the Court to avoid it. We think there's decent arguments as to why the TLRO is unique and not preempted. And if the Court will give me time, I can explain them. But they have not been fully briefed. Okay. Thank you very much. Would you like to do some rebuttal? You can have about two minutes because she went over. So let's make it two minutes. Good. First of all, I would like to point out in the record, ER page 33, Section 3, it says noninterference with regulatory or security activities, and that's one of the provisions. I'm sorry. I didn't hear that. ER 33 is the provision in the TLRO that talks about not interfering. Oh, I'm sorry. There's also strike-related picketing. It's not strike-related picketing. There was no strike-related picketing. Right. But I'm just talking about the conflict between the two. The question is what conflict is pertinent here in this case. Right. I'm sorry. ER 35, organizing activities shall not interfere with patronage of the casino. But then we're back to the same circular problem. Why was this interfering with patronage of the casino? Well, if you are soliciting patrons, it can certainly be conceived as a bother. You have a gaming facility six miles on either side of Casino Palma. If you have people bothering you while you're trying to have a good time, why wouldn't they just go to one of the other casinos? It's one of those things that's almost impossible to prove until the damage has occurred. You lose customers. You lose market share. It's almost impossible to prove until the harm is done. But I'd also like to talk a little bit more about the TLRO. It was enacted pursuant to IGRA federal statute. It's not a tribal law. And these are absolutely unique circumstances. If the board did have jurisdiction, it certainly declined to assert it for a very long time, and there has been an entire structure that's been created in its place. So then the board decides to just jump back in and overturn the apple cart. I mean, there's some sort of estoppel argument here, but it's new. It's weird. I agree. We don't really know how to approach it. But it does show that the act should not apply to tribes. It's very messy, and it doesn't work. And this is one of the problems inherent in doing so. Am I out of time? Okay. You are out of time. Thank you very much. Thank you for your arguments. The case of Palma v. NLRB.
judges: Berzon, Watford, Linn